IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:23-cr-10 |
| | ) | |
| AARON PAUL GONZALES, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and E. Rebecca Gantt, Assistant U.S. Attorney, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

The United States has no objections to the Presentence Investigation Report ("PSR"), and for the reasons discussed below, submits that the defendant's single unresolved objection to the PSR's offense level calculation, specifically to the five-level enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor, should be overruled.  The Probation Officer correctly determined the advisory guidelines range as 262 to 327 months of imprisonment, resulting from an offense level of 39 and criminal history category of I.  This advisory guidelines range is restricted by the statutory maximum penalty of 240 months.

Given the aggravated nature of the defendant's conduct towards minors to whom he had access, including Jane Doe and in particular, Jane Doe 2, and the significant danger he poses towards children, the government submits that a sentence of imprisonment of 240 months would

be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

I.	**Procedural Background**

The defendant was arrested on November 23, 2022, and a two-count criminal complaint was obtained the same day charging the defendant with distribution and possession of child pornography. ECF Nos. 1 & 2. After a detention hearing on November 29, 2022, the defendant was ordered detained pending trial. ECF Nos. 9 & 10. Following an extension of the time to indict, ECF No. 13, on January 25, 2023, the defendant waived indictment and pleaded guilty before U.S. Magistrate Judge Douglas E. Miller to a single count criminal information charging him with distribution of a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). ECF Nos. 20 & 23.

On May 18, 2023, the U.S. Probation Office filed a PSR which calculated the defendant's total offense level as 39 and his criminal history category as I, resulting in a guidelines range of 262 to 327 months of imprisonment, restricted by the available statutory maximum penalty of 240 months. ECF No. 28 at 19–20. The government had no objections to the PSR. The defendant objected to the PSR's application of a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor under USSG § 2G2.2(b)(5), and the paragraphs containing the underlying facts supporting that enhancement. The final sentencing PSR maintained this enhancement and resulting guidelines range. ECF No. 31 at 28–30.

II.	**Objection to the Presentence Investigation Report**

The only outstanding objection is the defendant's objection to a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor under USSG § 2G2.2(b)(5). The PSR was correct to apply this enhancement, which is clearly merited in light

of the defendant's repeated exploitative conduct directed at children to whom he had access. The Court should accordingly overrule the objection.

This enhancement applies where "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG § 2G2.2(b)(5). Such a "pattern of activity" is satisfied by "any combination of two or more separate instances of the sexual abuse or sexual exploitation[1] of a minor by the defendant." *Id.* App. n.1. The enhancement applies "whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." *Id.* The government understands the nature of the defendant's objection to principally be a factual one, regarding whether the alleged conduct occurred, rather than a legal one regarding whether the alleged conduct meets the criteria for the enhancement.

"The government bears the burden of proving the facts supporting the enhancement by a preponderance of the evidence." *United States v. Andrews*, 808 F.3d 964, 968 (4th Cir. 2015). As noted in the PSR, this enhancement is based principally on the defendant's repeated abuse of a child whom the government will refer to in this public pleading as Jane Doe 2. Jane Doe 2 is the older girl to whom the defendant had access, and who is identified in paragraph 37 of the PSR. Jane Doe is the younger girl to whom the defendant had access, and is also discussed in paragraphs 1 and 8 of the PSR.

As noted in the PSR, following the defendant's arrest and termination of access to Jane Doe 2, Jane Doe 2 reported to her grandmother that the defendant had for years touched her breasts

---

[1] "Sexual abuse or exploitation" is defined, as relevant here, as including conduct described in 18 U.S.C. § 2243(a), which pertains to a sexual act with a minor between ages 12 and 16 and more than four years younger than the defendant. A "sexual act" includes "the intentional touching, not through the clothing, of the genitalia, of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

3

and genitalia. Jane Doe 2 was then interviewed by a qualified forensic examiner, trained in interviewing children. The government has submitted a recording of this interview in full to the Court under seal as **Exhibit 1**. In this interview, Jane Doe 2 stated that on approximately a weekly basis for years, when no one else was present, the defendant would give her a "massage." He directed Jane Doe 2 not to wear underclothes so that he could give her better massages, and that during the course of the massage he would touch her breasts and the lips of her genitalia, often under her clothes.[2] Despite her telling him to stop, he would repeat this conduct during the next "massage." Jane Doe 2 also stated that the defendant would himself not wear underwear during these incidents.

As the testimony of the case agent, Special Agent John Shields of the U.S. Department of Homeland Security – Homeland Security Investigations, who observed this interview, will show, this abuse of Jane Doe 2 is corroborated not only by the defendant's clear sexual interest in minors shown in his online conduct, but specifically by other exploitative conduct the defendant directed at both Jane Doe 2 and Jane Doe. Regarding Jane Doe 2, in an earlier forensic interview she had disclosed an incident where after showering she saw that the defendant had a phone set up recording in the bathroom. In a post-arrest interview, the defendant did not deny that this incident happened, but disputed his intent. And regarding Jane Doe, as the defendant admitted in the Statement of Facts, he claimed in an online chat to be "dating" an individual with the same first name of Jane Doe. Further, the defendant kept on his phone a sexually explicit video of Jane Doe created approximately 2 years earlier, which he had recently accessed when his phone was seized. In a post-arrest interview, the defendant maintained that Jane Doe must have accidentally sent this video to him.

---

[2] There are charges pending against the defendant for this conduct in Chesapeake Circuit Court. PSR ¶ 49.

Jane Doe 2's reports, corroborated by the defendant's clear sexual interest in children as evidenced by the undisputed conduct in the statement of facts and other acts towards Jane Doe 2 and Jane Doe, are amply sufficient to support the enhancement by a preponderance of the evidence. Accordingly, the defendant's objection should be overruled.

### III. Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. USSG § 3E1.1(b). The PSR has properly applied a two-level decrease in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation. PSR ¶ 35.

### IV. Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at

50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

## V.     The Statutory Sentencing Factors

A. <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

The defendant's sexual interest in children first came to light after an online chatting application, Kik, reported that the defendant was engaging in sexually explicit chats with a 12-year-old minor. Unbeknownst to the minor, the defendant adopted two chat personas. One was a 27-year-old male who discussed sexual topics with the minor, including asking her if she masturbated. In the other persona, the defendant posed as a peer of the minor, falsely claiming to be a teenaged girl, and encouraged the minor to engage in sexual acts.

After Kik additionally reported that the same user had shared numerous child pornography files with other Kik users, law enforcement executed a search warrant at the defendant's residence in Chesapeake, Virginia in June 2022. In a voluntary interview, the defendant admitted to sharing child pornography files with others on the Internet because he thought "it would be fun." Law

6

enforcement seized his iPhone, which the defendant had only recently obtained about two months prior. The iPhone contained videos of both male and female children engaged in sexually explicit conduct, including children as young as two years old. It also included a sexually explicit video of Jane Doe, which was created in 2020 but accessed by the defendant in May 2022.

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

There is no apparent explanation for the defendant's highly disturbing conduct in his background and characteristics. The defendant is 37 years old and was born in Los Angeles. His parents were married when he was born, but divorced when he was two or three years old. When the defendant was five or six years old, he and his mother moved to Chesapeake, Virginia. The defendant reports having a great relationship with both his mother and his stepfather, both of whom are retired and live in the Hampton Roads area. The defendant had a good childhood free of any abuse.

The defendant is currently married and has a seven-year-old son from that marriage, as well as two stepchildren, ages 17 and 13. He was also previously married from 2006 to 2007.

The defendant reports graduating from high school in Chesapeake in 2004 and then attending Tidewater Community College. He has been employed in retail sales, most recently at a jewelry store from 2012 until his arrest in 2022.

He is in good physical health with no history of any chronic medical conditions. He has participated in mental health treatment and marital counseling, and has been diagnosed with depression. The defendant has some history of substance abuse, including alcohol abuse and cocaine use.

The defendant's criminal history is limited and his criminal history category is accordingly I. His only convictions are in 2012 for driving under the influence, and then later that year, driving without a license.

C. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

The defendant's conduct is extremely serious and warrants a serious sentence. In addition to the online sexual chats with individuals he believed to be minors, sharing numerous child pornography images online, the defendant also did not limit his exploitative conduct to the Internet but expanded it to minors to whom he had access. The Victim Impact Statements submitted by the known real children depicted in just a fraction of the defendant's child pornography files, as well as by individuals connected to Jane Doe and Jane Doe 2, and Jane Doe 2 herself, speak vividly to the lifelong traumatic impact of both hands-on abuse and the repeated viewing of the abuse by others for sexual gratification. Victims of child sexual abuse are likely to suffer long-lasting effects of the abuse. *See New York v. Ferber,* 458 U.S. 747, 758 n. 9 (1982). *See also* Shanta R. Dube et al., *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28(5) Am. J. Prev. Med., 430, 430 (2005) ("Studies examining the long-term effects of childhood abuse and related stressors have found increased risk for outcomes such as substance use and misuse, psychiatric disorders, suicide, and numerous other health and social problems."). The long-term effects of abuse such as that perpetrated by the defendant bear upon the need for just punishment.

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

Protection of the public is a factor of paramount importance in this case and merits the government's requested sentence of imprisonment. The defendant has demonstrated a consistent interest in the sexual abuse of children, and has unfortunately demonstrated that he is all too ready

and willing to act on these interests when given the opportunity to do so. A substantial sentence of incarceration is the only way to definitively curtail his opportunities to act on those interests.

    E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant would benefit from sex offender treatment, and substance abuse treatment. Although the defendant has graduated from high school, he may also benefit from post-secondary education or vocational opportunities.

    F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence for the defendant's crime of conviction, 18 U.S.C. § 2252(a)(2), is a mandatory minimum of five years and up to 20 years of imprisonment. 18 U.S.C. § 2252(b)(1). A term of supervised release is required for a minimum of five years, and may be imposed for life. 18 U.S.C. § 3583(k). Regarding special assessments, the defendant may be ordered to pay, in addition to the $100 special assessment, the $5,000 special assessment mandated by the Justice for Victims of Trafficking Act of 2015 ("JVTA") for non-indigent defendants, 18 U.S.C. § 3014, and up to $35,000 mandated for defendants convicted of distribution of child pornography under 18 U.S.C. § 2259A(a)(2), the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA"). The AVAA special assessment should be determined by reference to the factors in §§ 3553(a) and 3572.

    G. The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

The government's recommended sentence of the statutory maximum penalty of 240 months, while not technically a downward variance given the restricted guidelines range, is nonetheless below the advisory sentencing guidelines range that would apply absent the limitation of the statutory maximum penalty. Thus, a sentence of 240 months would adequately take into

9

account any mitigating factors and would not create any unwarranted disparities with other defendants convicted of child pornography offenses, many of whom lack any known history of hands-on offenses against minors, unlike the defendant.

H.  The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))

In his plea agreement, the defendant agreed that restitution was mandatory, and to the entry of a restitution order for the full amount of the victims' losses.  ECF No. 30 ¶ 10.  The defendant further agreed that pursuant to 18 U.S.C. § 3663(a)(3), victims of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct are victims within the meaning of 18 U.S.C. § 1593(c) and are entitled to restitution.  *Id.*

As of this filing, three of the sixteen identified victims depicted in the defendant's child pornography files have noted requests for restitution.  Undersigned counsel provided these requests to the defendant's counsel, but understands that a resolution of the restitution amount—which must be at least $3,000, 18 U.S.C. § 2259(b)(2)(B)—has not yet been reached.  Accordingly, the government requests that the Court bifurcate the restitution in this matter under 18 U.S.C. § 3664(d)(5), which allows restitution to take place within 90 days after the sentencing hearing.[3]  If the Court grants this request, the government further requests that the Court address at the sentencing hearing whether the defendant will waive his presence at any subsequent regarding restitution.  If he does not, then the government would request that he remain in local custody and not be transferred to the BOP until restitution is finally determined.

---

[3] NCMEC has generated four Victim Information Reports stemming from know victims portrayed in the defendant's child pornography materials (one for his phone and three for MEGA, an online cloud storage account).  The defendant's counsel has diligently resolved all restitution request for victims stemming from one of these reports; however, the government did not receive the other three reports until on or about November 3, 2022.  As of the date of this filing, it has not yet notified identified victims.

## VI.  Supervised Release Conditions

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d).  In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR.  *Rogers*, 961 F.3d at 299.  Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions on pages 21 through 23 of the PSR.

In addition to the mandatory and standard conditions of supervised release imposed for felony convictions, the government requests that the Court impose the special supervised release conditions that the U.S. Probation Office outlined on pages 23 through 26 of the PSR.  These include special conditions pertaining to substance abuse.  These also include the special conditions that the U.S. Probation Office typically requests and the Court typically imposes, with slight variations, for defendants convicted of child pornography offenses involving the Internet:

1. The defendant shall participate in a program approved by the United States Probation Office for Mental Health Treatment, to include a psychosexual evaluation and sex offender treatment. The costs of these program are to be paid by the defendant as directed by the probation officer. The defendant shall waive all rights of confidentiality regarding sex offender/mental health treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

2. The defendant shall not have any intentional contact with any child under the age of 18 unless accompanied by a responsible adult who is aware of the defendant's conviction and supervision status and who has been approved in advance by the court or probation officer. Intentional contact includes, but is not limited to, physical contact, verbal communication, written communication, and/or electronic communication such as e-mail. Intentional contact also includes going to, congregating and/or loitering within 100 yards around school yards, playgrounds,

swimming pools, arcades, zoos, or other places frequented by children under the age of 18. Intentional contact also encompasses any employment that would regularly provide the defendant with access to children under the age of 18, such as working in schools, childcare facilities, amusement parks and playgrounds. Incidental contact with children under 18 includes, but is not limited to, unavoidable interactions in public places such as grocery stores, department stores, restaurants, etc.

3. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006,[4] the defendant shall register with the state sex offender registration agency in any state where the defendant resides, works, and attends school, according to federal and state law and as directed by the probation officer.

4. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit their person, property, house, residence vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer.  Failure to submit to a search may be grounds for revocation of release.  The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner

5. The defendant shall notify his/her employer of: (1) the nature of his/her conviction; and (2) the fact that the defendant's conviction, related conduct, or prior criminal history was facilitated by the use of a computer and/or Internet. The defendant's employment shall be approved in advance by Probation and the Probation Office shall confirm the defendant's compliance with this notification requirement and possible Internet monitoring of his/her computer at employment.

6. The defendant shall not possess and/or use computers as defined in 18 U.S.C. § 1030(e)(1), or similar device that provides access to the Internet, which include use of computers at work, to communicate with any individual or group who promotes sexual abuse of children. The defendant shall cooperate with the probation office's computer monitoring program, which shall include, but not be limited to, disclosing all computers/devices (as defined in 18 U.S.C. § 1030(e)(1)), allowing the installation of monitoring software at the defendant's expense, and permitting random unannounced inspections of computer systems

---

[4] 18 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act.").  This condition is noted as a mandatory condition on page 21 of the PSR.

and Internet-capable devices and similar electronic devices under the defendant's control.

7. The defendant shall comply with the requirements of the computer monitoring program as administered by the probation office. The defendant shall allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) the defendant uses. The costs of the monitoring shall be paid by the defendant.

   To ensure compliance with the computer monitoring condition, the defendant shall allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. The defendant shall warn any other people who use these computers that the computers may be subject to searches pursuant to this condition. The defendant shall allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) the defendant seeks to use.

   The defendant shall submit to a search of all computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media. The defendant shall warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

   To ensure compliance with computer monitoring or supervision conditions, the defendant shall submit any records requested by the probation officer to verify compliance with the defendant's conditions including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

8. The defendant shall not view or possess any "visual depiction" of any "sexually explicit conduct" (as both terms are defined in 18 U.S.C. § 2256) involving a juvenile, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means.

9. The defendant shall not utilize, by any means, any social networking forums offering an interactive, user-submitted network of friends, personal profiles, blogs, chat rooms or other environment, including but not limited to YouTube,

       Facebook, or Instagram, without prior permission from the probation officer. The defendant shall provide account information to the probation officer, to include usernames and passwords.

10. The defendant shall submit to periodic polygraph testing at the discretion of the probation officer to ensure compliance with the requirements of the defendant's supervision and/or treatment program. The costs of the testing are to be paid by the defendant, as directed by the probation officer.

## VII. Conclusion

For the reasons stated above, the government submits that a sentence of imprisonment of 240 months would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Jessica D. Aber
United States Attorney

By: _____/s/_____
E. Rebecca Gantt
Assistant United States Attorney
VSB No. 83180
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on June 12, 2023, I will send an electronic copy of the foregoing to the following:

Latriston L. Cox<br>
United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov